UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

JOHN C. SHEKERJIAN,                           Case No. 09-14708

       Debtor.                              HONORABLE SEAN F. COX
_____/              United States District Judge

D.A.N. JOINT VENTURE III, L.P.,

       Plaintiff/Appellant,

v.

JOHN SHEKERJIAN,

       Defendant/Appellee.
_____/

## OPINION AND ORDER

Appellant D.A.N. Joint Venture III, L.P. ("DAN") filed this Bankruptcy Appeal [Doc. No. 1] on December 3, 2009. DAN appeals the final ruling of Hon. Steven W. Rhodes in Bankruptcy Adversary Proceeding No. 07-55859, in which the Bankruptcy Court held that DAN failed to establish by a preponderance of the evidence that it was a creditor of Appellee John Shekerjian ("Shekerjian"). The parties have fully briefed the issues[1], and this Court declines to hear oral argument pursuant to FED. R. BANKR. P. 8012. For the reasons that follow, the Court **AFFIRMS** the holding of the Bankruptcy Court.

## BACKGROUND

---

[1] Appellee Mr. Shekerjian, proceeding *pro se*, filed a letter with the Court on February 4, 2010, indicating that he did not wish to file a brief in this matter, relying instead upon the record from the Bankruptcy Court in support of his arguments. [*See* Doc. No. 12].

1

The relevant facts of this case are not disputed by the parties. On August 13, 2007, Mr. Shekerjian filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. On March 14, 2008, DAN filed an amended proof of claim in Mr. Shekerjian's bankruptcy proceedings. Mr. Shekerjian's amended Schedule F also listed DAN as the holder of a contingent, unliquidated, and disputed claim in an unknown amount. On April 15, 2008, the Bankruptcy Court ordered the conversion of Mr. Shekerjian's case to a Chapter 7 liquidation.

On July 21, 2008, DAN filed its Complaint Objecting to Discharge, alleging that Mr. Shekerjian should be denied his discharge in bankruptcy pursuant to 11 U.S.C. § 727. At the final pretrial conference, Mr. Shekerjian argued that one issue to be litigated was whether DAN had standing to object to Mr. Shekerjian's discharge - as Mr. Shekerjian contended there was no admissible evidence proving that DAN was a creditor of Mr. Shekerjian's estate. DAN objected to the standing issue being included as part of the hearing, as the standing issue was not raised by Mr. Shekerjian in his answer to DAN's complaint. [*See* Nov. 10, 2009 Tr., p.4]. The Court overruled DAN's objections on this issue, and proceeding to a hearing on November 10, 2009.[2]

At the November 10, 2009 hearing, DAN offered the testimony of William Shaulis ("Shaulis"), the executive vice president and chief operating officer of the Cadle Company - a general partner of DAN. Mr. Shaulis testified that DAN employs approximately 130 people, and is in the business of purchasing loan portfolios from various banks and other sources across the country. *Id*. at 6. Mr. Shaulis testified that banks will occasionally sell DAN a single asset portfolio at a time, but the majority of times banks sell his company bundles of between fifty and

---

[2] DAN's appellate brief [Doc. No. 10] does not contest Judge Rhodes' holding that the issue of standing was properly before the Court at the November 10, 2009 hearing.

fifteen-hundred accounts simultaneously. *Id*. at 7.

Since its inception in 1986, DAN has purchased approximately 1,000 to 1,500 such portfolios of assets, with a face value of several hundred billion dollars. *Id*. at pp.6-7. DAN has been purchasing loan portfolios from Fifth Third Bank ("Fifth Third") for at least ten years, in which time Mr. Shaulis estimated that DAN has purchased between twenty and twenty-five portfolios from Fifth Third totaling a hundred million dollars in face value. *Id*. at 10.

One such asset portfolio from Fifth Third - relevant to these proceedings - was purchased by DAN in February of 2007. Before the hearing began, Judge Rhodes had already precluded admission of the loan sale agreement in this matter, as DAN had not included it in the final pretrial order as a proposed exhibit.[3] Over objections from Defense Counsel, the following direct testimony from Mr. Shaulis was received by the Court at the November 10, 2009 hearing:

> Q: Do you have personal knowledge of the loan sale that included the John Richards Homes obligations?[4]
> A: Yes.
> Q: When was that loan sale?
> A: February of 2007.
> Q: Were there other obligations or other Fifth Third accounts involved in the sale, that portfolio sale?
> A: Yes.
> The Defense: Objection, your Honor. Under Federal Rule of Evidence 1002 if they wish to prove the contents of the sale document, the purchase agreement they need to produce the actual document.
> The Court: That objection is overruled for this question. Go ahead, sir.
> A: We purchased 64 accounts in that purchase from Fifth Third.
> Q: And how many of those 60 [*sic*] accounts were pertaining to John Richards Homes?

---

[3] DAN's appellate brief [Doc. No. 10] also does not contest Judge Rhodes' preclusion of the loan sale agreement between Fifth Third and DAN from evidence in this case.

[4] It is undisputed for purposes of this appeal that John Richards Homes was an entity owned by Mr. Shekerjian, which took out mortgages from Fifth Third on real property. It is also undisputed for purposes of this appeal that Mr. Shekerjian had personal obligations on these mortgages.

| | |
|---|---|
| A: | Of these 64, it was - - |
| The Defense: | Again, your Honor, objection. Same objection. If they wish to prove the contents - - |
| The Court: | Overruled again. Go ahead, sir. |
| A: | Three accounts. |

[Nov. 10, 2009 Tr., pp.10-11].

Though the Bankruptcy Court permitted Mr. Shaulis to testify - from personal knowledge - that *something related to Mr. Shekerjian's obligations to Fifth Third* had been included in the February 2007 sale, the Court sustained an objection - under Rule 1002 - to Plaintiff Counsel's next question posed to Mr. Shaulis: ". . . what did Fifth Third sell you when they sold you this account?" *Id*. at 11.

Attempting to stay away from the loan sale agreement's language, plaintiff's counsel attempted only a few minutes later to again elicit similar testimony from Mr. Shaulis:

| | |
|---|---|
| Q: | Do you have any personal knowledge, sir - - without any reference to a loan agreement, do you have personal knowledge of what Fifth Third Bank sold to the Cadle Company? |
| The Defense: | Again, your Honor, I'm going to object. That evidence would be - - the best evidence for that - - the Federal Rules require the document, not the witness' personal knowledge. |
| The Court: | The objection is sustained. |

*Id*. at 15.

Mr. Shaulis also testified that DAN never actually received the original notes from Fifth Third related to Mr. Shekerjian's alleged debt:

| | |
|---|---|
| Q: | Did your company ever receive the original notes from Fifth Third Bank? |
| A: | No, we did not. |
| Q: | How do you know you didn't receive the original notes? |
| A: | Well, it's customary practice when we're purchasing loans that the seller would immediately transfer any and all loan documents that they have in their possession at the time of closing. On this particular case, they were required the day before closing to compile everything and have it available and to send all the original documents. |

4

> Q: And this is what you got?
> A: This is what we got.

*Id*. at 19.

Mr. Shaulis then testified that he believed Mr. Shekerjian still owed money on the original Fifth Third obligations. *Id*. at 29. In response to Mr. Shaulis' testimony regarding Mr. Shekerjian's original debt owed to Fifth Third, the Court itself questioned the witness directly as follows:

> Q: Excuse me. How did you know there is a balance due [currently]?
> A: How do I know today? With the balances that were transferred - -
> Q: How do you know that there's a balance due?
> A: With the payment histories and the balances that were transferred to us by Fifth Third Bank, we never received a complete payoff of the accounts. There were three accounts.
> Q: *So the only way you know there's a balance due is because Fifth Third told you*?
> A: *That is correct*. And, well, again, we filed proofs of claim. The proofs of claim were not rejected.
> Q: Right, but *the proof of claim is based on the hearsay from Fifth Third, right*?
> A: *That is correct*. That was included in the loan sale agreement.

[Nov. 10, 2009 Tr., pp.29-30 (emphasis added)]. After counsel for Mr. Shekerjian objected to Mr. Shaulis' testimony on the subject as hearsay, and after arguments from counsel, the Court sustained the objection:

> . . . He's [Mr. Shaulis] testified to the course of dealing, and that's fine, except that what he has testified to is that neither he nor his company have firsthand knowledge of the debt. They rely on what their transferor or assignor tells them the debt is, which is fine for business, but in court it's a problem. It's hearsay. The objection is sustained.

*Id*. at 32.

DAN also offered the testimony of Ryan Naumes ("Naumes"), a special assets portfolio manager with Fifth Third. Mr. Naumes was familiar "by name" with John Richards Homes and

5

with Mr. Shekerjian, but had no personal knowledge of what happened to the John Richards Homes obligations owed to Fifth Third. *Id*. at 36. Mr. Naumes did testifiy, however, that he believed the obligations were sold to DAN, and that Fifth Third no longer retains any obligation by John Richards Homes or by Mr. Shekerjian on its books. *Id*. at 37.

Counsel for DAN then attempted to elicit testimony from Mr. Naumes regarding the legitimacy of the obligations it sold to Fifth Third. Rejecting the premise of Plaintiff Counsel's questions, the Court then interjected with questions of its own:

> Q: In your experience on the loan sale team, is there any reason that Fifth Third would include an obligation on a loan sale that - - for which nothing was owed?
> A: I don't believe they would.
> The Court: Well, Fifth Third would make money if it sold a debt on which it wasn't owed any money, wouldn't it?
> A: I guess it would.
> The Court: And that's what your employer is in the business of doing, isn't it, making money?
> A: Um-hmm.
> The Court: Yes?
> A: Yes.

*Id*. at 46-47. Thus, DAN did not offer *any* evidence at the November 10, 2009 hearing that DAN was in possession of a valid assignment of Mr. Shekerjian's unpaid debt to Fifth Third.

At the close of DAN's evidentiary submissions on November 10, 2009, counsel for Mr. Shekerjian moved for a directed verdict based on DAN's lack of standing to object to Mr. Shekerjian's discharge under § 727:

> . . . I'd move at this time for a directed verdict. The testimony we've heard today, at best there might be some indebtedness, but we have no testimony whatsoever about what the balance of that indebtedness is, and, more importantly, the only testimony we've heard today that's been admissible is that it's owed, it if's owed at all, to Fifth Third. Plaintiffs [*sic*] have not presented any admissible evidence regarding the purchase agreement that they allege was executed. They produced no evidence whatsoever that the loan documents were assigned over to them. . .

6

> They have no proof whatsoever in the record that they were assigned the debt as of the commencement of this case or even today because none of the documents purporting to assign the debt to them have been admitted into the record; therefore, they're not a creditor, and the case should be dismissed.

[Nov. 10, 2009 Tr., pp.55-56]. In response, counsel for DAN argued as follows:

> I believe that the Bankruptcy Code is clear that a - - or perhaps it's the rule, so I apologize for not having a specific cite - - that a proof of claim is deemed valid unless objected to, so to some extent D.A.N. Joint Venture, III, is a creditor in this case because it has an uncontested proof of claim. There has not been a proof of claim filed by Fifth Third Bank.

*Id*. at pp.56-57.

In granting Mr. Shekerjian's motion for directed verdict, the Bankrupcty Court held as follows:

> It is established law not contested here that in order to maintain an objection to a discharge under Section 727, as the plaintiff has here, that plaintiff must be a creditor of the debtor. . . [T]he Court concludes, as a matter of law, that the plaintiff bears the burden of proving by a preponderance of the evidence that it is a creditor of the debtor and as a result would have standing to assert an objection to a discharge under 11 U.S.C., Section 727.
> After considering the evidence before the Court, the Court must conclude that the plaintiff has failed to establish with any evidence that it received an assignment of the debt owing by the debtor, Mr. Shekerjian, to Fifth Third Bank - - from Fifth Third Bank. There's no documentary proof of that and no testimony concerning that that is admissible under the Federal Rules of Evidence.
> It is further asserted that the plaintiff has filed a proof of claim and that no one has objected to the proof of claim, and, therefore, it is deemed allowed. . . . The difficulty is that a proof of claim establishes only the creditor's right to a distribution from the estate and is deemed valid only as to the estate. It is not at all binding on any other party, including the debtor. . . .
> Accordingly, the Court concludes that the motion for a judgment of dismissal by Mr. Shekerjian must be granted, and the Court will enter an order to that effect.

*Id*. at 58-59.

DAN filed a notice of appeal in this matter on December 3, 2009 [*See* Doc. No. 1]. In its appellate brief, DAN advances four primary arguments: 1) that DAN's uncontested proof of

7

claim filing evidences its creditor status; 2) that Mr. Shekerjian's Schedule F evidences DAN's creditor status; 3) that the testimony at the November 10, 2009 hearing evidences DAN's creditor status; and 4) that the Bankruptcy Court erred in precluding - under the Best Evidence Rule - Mr. Shaulis' testimony regarding the terms of the loan sale agreement between Fifth Third and DAN.

STANDARD OF REVIEW

In reviewing cases from the Bankruptcy Court on appeal, this Court reviews the Bankruptcy Court's findings of fact under a clear error standard. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997). A factual finding is clearly erroneous when "the reviewing court is left with a definite and firm conviction that a mistake has been committed." *United States v. Aven*, 997 F.2d 1150, 1152 (6th Cir. 1993). The Court reviews the Bankruptcy Court's conclusions of law under a de novo standard. *In re Baker & Getty*, 106 F.3d at 1259. Finally, as with all evidentiary rulings made by a federal court, the Bankruptcy Court's rulings on evidentiary issues are reviewed for an abuse of discretion. *See Hill v. Marshall*, 962 F.2d 1209, 1214 (6th Cir. 1992).

ANALYSIS

At the November 10, 2009 hearing, the Bankruptcy Court found that DAN lacked standing to contest Mr. Shekerjian's discharge, and therefore dismissed DAN's complaint. DAN raises four separate arguments on appeal. For the reasons discussed below, as none of DAN's arguments on appeal have merit, this Court **AFFIRMS** the holdings of the Bankruptcy Court.

    I. <u>DAN's Uncontested Proof of Claim as Evidence of Creditor Status</u>.

In its appellate brief [Doc. No. 10, pp.10-13], DAN argues that it is a creditor of Mr.

Shekerjian's estate as a matter of law due to DAN's uncontested proof of claim filed in Mr. Shekerjian's Chapter 11 bankruptcy case. Mr. Shekerjian concedes that DAN filed an Amended Proof of Claim on March 14, 2008, and this fact was admitted into evidence at the November 10, 2009 hearing without objection. [Nov. 10, 2009 Tr., p.25]. As a legal conclusion, the Court reviews the Bankruptcy Court's holding on this issue under a *de novo* standard. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997).

> The Bankruptcy Code defines "claim" in material part as "[the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[,]" 11 U.S.C. § 101(5)(A), and the Supreme Court has held that "Congress intended this language to adopt the broadest possible definition of 'claim,' and that 'right to payment' [means] nothing less than an enforceable obligation. . . ."

*In re Waldo*, 417 B.R. 854, 882 (Bankr. E.D. Tenn. 2009), citing *Johnson v. Home State Bank*, 501 U.S. 78 (1991). Further, the Bankruptcy Code defines "creditor" as an "entity that *has* a claim against a debtor that arose at the time of or before the [debtor's petition]." 11 U.S.C. § 101(10)(A) (emphasis added).

DAN's arguments to the contrary notwithstanding, the relevant issue decided in the November 10, 2009 hearing before Judge Rhodes was not whether what DAN possessed was a *claim*, but rather, whether DAN *had, i.e., possessed*, a claim in the first place. The Court affirms Judge Rhodes' holding that DAN failed to bring forth any admissible evidence that it possessed a "claim" under 11 U.S.C. § 101(5)(A), and thus, as a matter of law, was not a "creditor" under 11 U.S.C. § 101(10)(A) capable of objecting to Mr. Shekerjian's discharge.

DAN argues that the Bankruptcy Court's "trial on the issue of standing constituted an improper and expedited claim objection process, contrary to 11 U.S.C. § 502 and Bankruptcy

9

Rule 3002, which establish a specific procedure and require notice and a hearing before ruling on an objection to a claim." [Def.'s Br., Doc. No. 10, p.11]. This argument lacks merit. As the Bankruptcy Court held, the procedures by which *the estate* would object to DAN's proof of claim under § 502 are not analogous to the procedures by which DAN would object to Mr. Shekerjian's personal discharge under § 727:

> It is further asserted that the plaintiff has filed a proof of claim and that no one has objected to the proof of claim and, therefore, it is deemed allowed. The Court concludes, as a matter of fact and law, that as far as that goes, it is all true and supported by the record. *The difficulty is that a proof of claim establishes only the creditor's right to distribution from the estate and is deemed valid only as to the estate. It is not at all binding on any other party, including the debtor*.

[Nov. 10, 2009 Tr., pp.58-59 (emphasis added)]. The Court agrees, and finds DAN's arguments to the contrary without merit.

DAN's reliance upon *In re Kilroy*, 354 B.R. 476 (Bankr. S.D. Texas 2006) and *In re Moreau*, 161 B.R. 742 (Bankr. D. Conn. 1993) is similarly misplaced. Both *In re Kilroy* and *In re Moreau* stand for the proposition that the *legitimacy* of a claim *possessed* by a creditor is immaterial to whether the creditor has standing to object to a debtor's discharge.

In *In re Kilroy*, the creditor had a disputed legal claim, which entitled the creditor to object to the debtor's discharge despite the disputed nature of the claim. 354 B.R. at 488. Unlike *In re Kilroy*, here what is disputed is not the legitimacy of DAN's underlying claim, but *whether DAN possessed a claim in the first place*.

Similarly, *In re Moreau* held that "any entity *holding a claim* against the debtor may file a nondischargeability complaint, regardless of whether that claim is filed or allowable." 73 B.R. at 638 (emphasis added). Again, what is disputed in the instant case is not whether DAN's claim is "filed or allowable," but whether *DAN possessed a claim in the first place*. DAN's arguments

10

to the contrary are without merit.

## II. Shekerjian's Schedule F as Evidence of DAN's Creditor Status.

In its appellate brief [Doc. No. 10, pp.13-14], DAN argues that it is a creditor as a matter of law due to Mr. Shekerjian's inclusion of these loans on Amended Schedule F to his Statement of Financial Affairs. These amended bankruptcy papers constituted Exhibit 129 at the November 10, 2009 hearing, and were admitted by stipulation of the parties in their Final Pretrial Order.

Though included as an exhibit stipulated to between the parties in their Final Pretrial Order, DAN did not raise this specific argument before the Bankruptcy Court at the November 10, 2009 hearing. As such, the Sixth Circuit counsels that this Court has discretion regarding whether to even consider this issue on appeal:

> Ordinarily, courts of appeals do not consider claims or arguments that were not raised in the district court. But this is a prudential rule, not a jurisdictional one. *See. . . Austin v. Healey*, 5 F.3d 598, 601 (2d Cir. 1993) (noting that although the courts of appeals generally avoid considering issues not passed on below, "this rule is one of prudence (and does not limit [the appellate court's] jurisdiction)," and leaves the courts of appeals "with considerable discretion to decide questions not raised initially in the district court."). . . .

*United States v. Hayes*, 218 F.3d 615, 619-20 (6th Cir. 2000).

Even considering this issue as presented by DAN in this appeal, DAN's arguments regarding the Schedule F disclosure fail for the same reasons as does DAN's "proof of claim" argument discussed *supra*. DAN relies upon *In re Bailey*, 375 B.R. 410 (Bankr. S.D. Ohio 2007) for the proposition that a scheduled debt constitutes *prima facie* evidence of DAN's status as a creditor. As with *In re Kilroy* and *In re Moreau*, discussed *supra*, DAN's reliance upon *In re Bailey* is similarly without merit - *In re Bailey* held that "a *creditor* on a disputed debt has

11

standing to prosecute a § 727 cause of action." 375 B.R. at 415.  The dispute in *In re Bailey* centered around the merits of that creditor's claim, not whether the creditor possessed a claim in the first place.  DAN's arguments to the contrary are without merit.

   III.  Trial Testimony as Evidence of DAN's Creditor Status.

In its appellate brief [Doc. No. 10, pp.14-15], DAN argues the Bankruptcy Court erred in holding that the testimony at the November 10, 2009 hearing did not support DAN's contention that it was a creditor of Mr. Shekerjian - and therefore eligible to object to his discharge.  As with all factual findings, this Court reviews Judge Rhodes' factual findings in the November 10, 2009 hearing for clear error.  *In re Baker & Getty Financial Services, Inc.*, 106 F.3d at 1259.

Again, to be a "creditor" under 11 U.S.C. § 101(10)(A), one must "ha[ve] a claim against a debtor. . . ."  During closing arguments, counsel for Mr. Shekerjian argued that DAN had failed to present any evidence supporting its argument that it *had* a claim against Mr. Shekerjian:

> So essentially plaintiffs have done, at best, the job showing that Fifth Third was owed money as of the commencement of this case.  They have no proof whatsoever in the record that they were assigned that debt as of the commencement of the case or even today because none of the documents purporting to assign the debt to them have been admitted into the record; therefore, they're not a creditor, and the case should be dismissed.

[Nov. 10, 2009 Tr., p.56].  The Bankruptcy Court agreed:

> After considering the evidence before the Court, the Court must conclude that the plaintiff has failed to establish with any evidence that it received an assignment of the debt owing by the debtor, Mr. Shekerjian, to Fifth Third Bank - - from Fifth Third Bank.  There's no documentary proof of that and no testimony concerning that that is admissible under the Federal Rules of Evidence.

*Id*. at 58.  The Court agrees.

DAN argues that "[t]he pertinent testimony was that Appellant bought *the debt* from Fifth Third Bank. . . ." [Def.'s Br., Doc. No. 10, p.14 (emphasis added)].  The testimony does not

12

support this contention.  Rather, the testimony from Mr. Shaulis and from Mr. Naumes only supports the fact that DAN bought something *related to the debt*.  Mr. Shaulis had no idea whether the debt owed by Mr. Shekerjian to Fifth Third was valid - neither did Mr. Naumes, for that matter.  Further, neither witness could definitively testify to exactly what DAN bought from Fifth Third in February of 2007.

While the sales agreement documents related to the sale between Fifth Third and DAN *may* have evidenced the valid assignment of a valid debt, those documents *were not admitted into evidence*, and testimony *about those documents* by Mr. Shaulis was precluded under the Best Evidence Rule.  On these facts, the Court finds that the Bankruptcy Court did not commit clear error by finding that the testimony at the November 10, 2009 hearing did not evidence that DAN was a creditor of Mr. Shekerjian's estate.  DAN's arguments to the contrary are without merit.

    IV.  The Bankruptcy Court's Application of the Best Evidence Rule.

In its appellate brief [Doc. No. 10, pp.15-18], DAN argues that the Bankruptcy Judge misapplied the Best Evidence Rule in precluding testimony by Mr. Shaulis regarding the terms of the assignment between Fifth Third and DAN.  As with all appeals related to evidentiary rulings, the Court reviews Judge Rhodes' ruling under an abuse of discretion standard.  *See Hill v. Marshall*, 962 F.2d 1209, 1214 (6th Cir. 1992).  DAN argues as follows:

> . . . the agreement did not constitute the best evidence of the fact that the loans were sold to Appellant, only the details of the economic terms upon which the sale occurred which is unnecessary as tyo [*sic*] whether a sale had occurred.  The economic terms of the sale are irrelevant.  What is critical is only that there was a sale from Fifth Third to Appellant.

[Def.'s Br., Doc. No. 10, p.15].  DAN goes on to argue further that "[t]he witness' [*sic*] own

13

personal knowledge could have produced testimony that was just as reliable as the agreement would have been as to the sale occurring but perhaps not as to the economic terms of the sale." *Id*. at 16.

This argument misses the point. The Bankruptcy Court *allowed* Mr. Shaulis to testify as to the *existence* of the assignment - and overruled an objection from Mr. Shekerjian's counsel precisely to that effect:

> The Witness: We purchased 64 accounts in that purchase from Fifth Third.
> DAN's Counsel: And how many of those 60 [*sic*] accounts were pertaining to John Richards Homes?
> The Witness: Of these 64, it was - -
> Debtor's Counsel: Again, your Honor, objection. Same objection. If they wish to prove the contents - -
> The Court: Overruled again. Go ahead, sir.
> The Witness: Three accounts.

[Nov. 10, 2009 Tr., p.11]. The evidentiary objection by debtor's counsel which *was* sustained, however, was in relation to very next question asked by DAN's counsel to Mr. Shaulis - ". . . what did Fifth Third sell you when they sold you this account?" *Id*. Thus, while Judge Rhodes permitted Mr. Shaulis to testify that Fifth Third assigned *something* to DAN, Judge Rhodes precluded testimony regarding *exactly what was assigned* to DAN under the Best Evidence Rule.

Rule 1002 of the Federal Rules of Evidence, also known as the "Best Evidence Rule," provides: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." "By its own terms, the rule is implicated only in instances *where the contents of a writing, recording, or photograph are at issue*." *DeMarco v. Ohio Decorative Products, Inc.*, 1994 WL 59009, *9 (6th Cir. Feb. 25, 1994) (emphasis added).

In its brief, DAN argues as follows related to the contents of the loan sale agreement between Fifth Third and DAN:

> Neither the contents nor the terms of the Amended Loan Sale Agreement were critical to the determination of whether Appellant had standing to object to Shekerjian's discharge. Rather, it was the fact that the sale occurred at all that was relevant, not the specifics of the economic terms upon which the sale occurred.

[Def.'s Br., Doc. No. 10, p.17].

The Court disagrees. The only admissible evidence testified to by Mr. Shaulis related to the fact that *a sale occurred* between Fifth Third and DAN. Entirely devoid from the record was any mention of *what exactly DAN purchased from Fifth Third* - which would need to be proven by the assignment documents under the Best Evidence Rule.

DAN also relies upon the Comments to Rule 1002, which discuss the holding in *D'Angelo v. United States*, 456 F.Supp. 127, 131 (D. Del. 1978): "The [best evidence] rule is not applicable when a witness testifies from Personal [*sic*] knowledge of the matter, even though the same information is contained in a writing." [Def.'s Br. Doc. No. 10, pp.16-16]. DAN's reliance upon *D'Angelo*, however, is misplaced - as evidenced from the November 10, 2009 transcript, Mr. Shaulis *had no personal knowledge as to what was properly being assigned*, it was all *hearsay testimony* received from Fifth Third. [*See* Nov. 10, 2009 Tr., pp.29-32].

Even assuming, *arguendo*, that the terms of sale - i.e., *what DAN was buying from Fifth Third* - could be attested to by a witness with personal knowledge - a conclusion this Court emphatically does *not* reach today - Mr. Shaulis and Mr. Naumes each admittedly did not have personal knowledge of the transaction's relevant terms anyways. For these reasons, the Court affirms Judge Rhodes' application of the Best Evidence Rule to the facts of this case as

presented in the November 10, 2009 hearing. DAN's arguments to the contrary are without merit.

## CONCLUSION

For the reasons explained above, the Court **AFFIRMS** the holding of the Bankruptcy Court.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 5, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 5, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager